IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-00570-FL

| | |
|---|---|
| KRAUSZ INDUSTRIES LTD. <br> f/k/a Krausz Metal Industries Ltd., <br><br> Plaintiff, <br><br> v. <br><br> SMITH-BLAIR, INC., SENSUS USA, <br> INC., and SENSUS MANUFACTURING <br> SHANGHAI LTD., <br><br> Defendants. | **REPLY IN SUPPORT OF <br> DEFENDANT SENSUS <br> MANUFACTURING SHANGHAI <br> LTD.'S MOTION TO DISMISS <br> FOR LACK OF PERSONAL <br> JURISDICTION** |

Plaintiff Krausz Industries Ltd. ("Krausz") has failed to show a basis upon which jurisdiction may be asserted over defendant Sensus Manufacturing Shanghai Ltd. ("Sensus Shanghai") consistent with due process. Accordingly, Sensus Shanghai should be dismissed from this action.

**I.    SENSUS SHANGHAI HAS NOT WAIVED ITS RIGHT TO CHALLENGE PERSONAL JURISDICTION.**

It is undisputed that Sensus Shanghai properly preserved its objection to personal jurisdiction in its answer, as required by FED. R. CIV. P. 12(h)(1).[1] Thus, the issue before the Court is whether Sensus Shanghai's properly-stated jurisdictional defense has been waived "through conduct, such as extensive participation in the litigation on the merits," 5A C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1391 (2012), a question that lies within the Court's discretion. *U.S. v. Ziegler,* 111 F.3d 878, 882 (Fed. Cir. 1997).

---

[1]    *See* Defendant Sensus Manufacturing Shanghai Ltd.'s Answer to Complaint and Counterclaims [DE 41], filed December 3, 2013, p. 9 ("The Complaint should be dismissed as to Sensus Shanghai [pursuant] to FED. R. CIV. P. 12(b)(2) because it is not subject to personal jurisdiction.").

There should be no finding of waiver because Sensus Shanghai's participation in this case to date has been minimal. As Krausz points out, Sensus Shanghai filed counterclaims with its answer seeking declaratory judgments that it does not infringe the '556 patent and that the '556 patent is not valid [DE 41]. Krausz concedes, however, that Sensus Shanghai's assertion of counterclaims is of no consequence,[2] because the Federal Circuit has ruled that "filing a counterclaim, compulsory or permissive, cannot waive a party's objections to personal jurisdiction, so long as the requirements of Rule 12(h)(1) are satisfied." *Rates Tech. Inc. v. Nortel Networks Corp.,* 399 F.3d 1302, 1308 (Fed. Cir. 2005). Every other filing that Sensus Shanghai has made in this Court has been as a tag-along with its co-defendants, Smith-Blair, Inc. ("Smith-Blair") and Sensus USA, Inc. ("Sensus USA). Examples of such filings are the Joint Rule 26(f) report [DE 48], defendants' Markman briefs [DE 62, 66], and the motion by all parties for a protective order to preserve the confidentiality of materials disclosed in discovery [DE 105]. Smith-Blair and Sensus USA would have made each of those filings *with or without* Sensus Shanghai as a party in the case. Thus, in no way has Sensus Shanghai itself caused the Court or Krausz to expend any additional time or effort on this case.

Sensus Shanghai's participation in proceedings such as the Rule 26(f) conference and the Markman hearing also took place in conjunction with Smith-Blair and Sensus USA, and in none of those proceedings did Sensus Shanghai request any substantive relief from the Court independent of the relief being sought by Smith-Blair and Sensus USA. Such joint participation with other parties in required litigation activities does not support a finding of waiver. *See Clark v. City of Zebulon,* 156 F.R.D. 684, 694 (N.D. Ga. 1993).

---

[2] *See* Krausz Industries Ltd.'s Response in Opposition to Sensus Manufacturing Shanghai, Ltd.'s Motion to Dismiss Pursuant to Rule 12(b)(2) [DE 120] ("Pl. Opp."), p. 4.

Sensus Shanghai also has not independently undertaken any discovery of significance. The interrogatories, document requests and notices of deposition that Krausz claims to have received from Sensus Shanghai actually were served on behalf of *all* defendants.[3] Two of the interrogatories jointly propounded by defendants sought to ascertain (a) the factual support (if any) for Krausz's allegation that Sensus USA directs Sensus Shanghai in many of its actions and (b) the factual support (if any) for Krausz's allegation that Sensus Shanghai manufactures, uses, offers for sale, sells or imports the accused Top Bolt® 421 products in the United States.[4] While those interrogatories did focus on Sensus Shanghai's involvement in the case, they both concerned facts directly related to Sensus Shanghai's jurisdictional defense. With respect to the other discovery requests for which Sensus Shanghai was among the propounding defendants, all of those requests would have been served on Krausz even if Sensus Shanghai were *not* a party to this case. Thus, in discovery, as in all other aspects of this case, Sensus Shanghai's tag-along participation in the litigation with Smith-Blair and Sensus USA has not caused Krausz or the Court to expend any substantial time or effort beyond that which would have been required if Sensus Shanghai had never been named as a party.

Also weighing heavily against a finding of waiver is Sensus Shanghai's repeated reservation of its jurisdictional defense after filing its answer. Defendants' disclosure of preliminary non-infringement and invalidity contentions (served April 17, 2014), as well as their supplemental disclosures (served September 3, 2014), noted that they were "subject to and without waiver of all defenses they have asserted in this case, including but not limited to

---

[3] *See* Defendants' First Set of Interrogatories to Plaintiff (No. 1-15) (Exhibit 1); Defendants' First Request to Plaintiff for Production of Documents and Tangible Things (No. 1-94) (Exhibit 2); Defendants' Second Set of Interrogatories to Plaintiff (No. 16-19) (Exhibit 3); Defendants' Second Request to Plaintiff for Production of Documents and Tangible Things (No. 95-104) (Exhibit 4); Defendants' Third Set of Interrogatories to Plaintiff (No. 20) (Exhibit 5); Notices of Deposition of J. Paul Tullis, Ph.D., Krausz Inc., Krausz Industries Ltd., Danny Krausz and Avraham Chiproot (Exhibit 6).

[4] *See* Defendants' Second Set of Interrogatories to Plaintiff (No. 16-19), Interrogatories No. 18, 19.

defenses related to personal jurisdiction. . . ."[5] In October 2014, in response to an interrogatory from Krausz concerning the facts supporting Sensus Shanghai's affirmative defenses, Sensus Shanghai provided Krausz with a detailed explanation of the facts supporting its jurisdictional defense.[6] More recently, in defendants' disclosures of their final non-infringement and invalidity contentions (served September 28, 2015), defendants again advised Krausz that their disclosures were "subject to and without waiver of . . . defenses related to personal jurisdiction . . . ."[7] In view of the numerous notices provided to Krausz that jurisdictional defenses were being reserved, Sensus Shanghai's filing of the instant motion could not have been a surprise.

Contrary to Krausz's claim, rather than effecting a waiver of the jurisdictional defense, the timing of the instant motion is a product of Sensus Shanghai's reasonable effort to conserve limited judicial resources. In the Markman process, if the Court had adopted defendants' proposed construction of the "inner space therein" or "torn off" element of the '556 patent, it likely would have produced a prompt resolution of Krausz's claims in defendants' favor. Accordingly, until a claim construction order issued, Sensus Shanghai quite sensibly sought to avoid burdening the Court with potentially unnecessary and time-consuming jurisdictional motion practice. Sensus Shanghai moved forward with its jurisdictional motion promptly after the claims were construed, filing its motion to dismiss only about 2 months after the claim construction order issued.

The two Federal Circuit decisions that Krausz relies upon actually confirm that Sensus Shanghai has not waived its personal jurisdictional defense. In *U.S. v. Ziegler,* the Federal

---

[5] Defendants' Disclosure of Preliminary Non-Infringement and Invalidity Contentions Pursuant to Local Patent Rule 303.3 and 303.4, p. 2 (excerpt attached as Exhibit 7); Defendants' First Supplemental Disclosure of Preliminary Non-Infringement and Invalidity Contentions Pursuant to Local Patent Rule 303.3 and 303.4, p. 2 (excerpt attached as Exhibit 8).

[6] *See* Defendant Sensus Manufacturing Shanghai Limited's Objections and Responses to Plaintiff's Second Set of Interrogatories, Response No. 12 (excerpt attached as Exhibit 9).

[7] Defendants' Disclosure of Final Non-Infringement and Invalidity Contentions Pursuant to Local Patent Rule 303.6(b) (excerpt attached as Exhibit 10).

4

Circuit affirmed a finding by the Court of International Trade that defendant did not waive his right to challenge personal jurisdiction due to insufficient service of process. 111 F.3d at 883. After properly preserving his jurisdictional defenses in his answer, Ziegler actively litigated the case for 22 months, served interrogatories and document requests, deposed witnesses, and filed motions to compel – all without raising the issue of personal jurisdiction. *Id.* at 879. In fact, Ziegler did not even file his motion to dismiss until after his summary judgment motion had been denied and the parties had submitted their proposed pretrial order. *Id.* Clearly, the activity by Ziegler that was held not to constitute a waiver of his personal jurisdiction defense is much more extensive than Sensus Shanghai's peripheral involvement in the present case. In the other Federal Circuit case cited by Krausz, defendants were held to have waived their right to challenge personal jurisdiction because they stipulated to a preliminary injunction order that precluded them from further contact with plaintiff's customers. *See Aeration Solutions, Inc. v. Dickman,* 2004 U.S. App. LEXIS 573 *5 (Fed. Cir. 2004) (non-precedential decision). In finding waiver, the Federal Circuit stressed that it "[could] think of few actions that more clearly signal an acceptance of a court's jurisdiction than signing a stipulated injunction order. Such an action, without reservation, expressly indicates a party's willingness to submit itself to the equitable powers of the court." *Id.* *7. Here, unlike the defendants in *Aeration Solutions,* Sensus Shanghai's activity in this case reflects no substantive acquiescence to judicial power amounting to a waiver of personal jurisdiction. Together, *Ziegler* and *Aeration Solutions* show that Sensus Shanghai's participation in this case is not of the character that should be deemed a waiver of a jurisdictional defense.[8] Krausz's waiver argument should be rejected.

---

[8] The other authorities cited by Krausz are easily distinguished. In *Foster v. Arletty 3 S.a.r.l.,* 278 F.3d 409 (4th Cir. 2002), waiver was found where the defendant litigated the case for 3 ½ years, engaged in extensive discovery, and filed a Rule 12 motion to dismiss that did not raise personal jurisdiction. In *In re Polyester Staple Antitrust Litig.,* 2008 U.S. Dist. LEXIS 43865 (W.D.N.C. Apr. 1, 2008), the Court found waiver based upon more

## II. SENSUS SHANGHAI IS NOT SUBJECT TO JURISDICTION UNDER THE "STREAM OF COMMERCE" THEORY

Turning now to the substance of Krausz's opposition, it is notable that Krausz has not argued that Sensus Shanghai is subject to general jurisdiction, nor has Krausz argued that Sensus Shanghai is subject to specific jurisdiction based upon its contacts with North Carolina. Rather, Krausz's sole argument for asserting personal jurisdiction over Sensus Shanghai based upon its own activities is limited to the "stream of commerce" theory. The record makes clear, however, that Sensus Shanghai is not subject to personal jurisdiction in North Carolina on that basis.

In its opposition, Krausz notes that *Asahi Metal Indus. Co. v. Superior Court of Cal.* presented two plurality opinions addressing the "stream of commerce" theory of jurisdiction. 480 U.S. 102 (1987). Under the "foreseeability" approach advanced by Justice Brennan, jurisdiction based on the placement of a product into the stream of commerce may be deemed consistent with due process "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State. . . ." *Id.* at 117. This "foreseeability" approach was rejected by Justice O'Connor, who wrote that "[t]he 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 776.

Krausz ignores, however, that the Supreme Court has recently revisited the "stream of commerce" theory. *See J. McIntyre Machinery, Ltd. v. Nicastro,* 131 S. Ct. 2780 (2011). As in

---

than two years of active litigation conduct and defendant's prior waiver of a jurisdictional defense in another action within the same MDL proceeding. In *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58 (2nd Cir. 1999), waiver of a jurisdictional defense occurred where defendant actively participated in extensive litigation activity for over four years before moving to dismiss. Each of those cases shows extensive litigation participation by defendant that is not present here.

*Asahi,* no single opinion in *McIntyre* represented a majority of the Court. The plurality (Justices Kennedy, Roberts, Scalia and Thomas) endorsed Justice O'Connor's "something more" approach in *Asahi,* holding that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its good will reach the forum State." *Id.* at 2788. The *McIntyre* plurality also rejected Justice Brennan's "foreseeability" approach as "inconsistent with the premises of lawful judicial power," because "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789. The plurality also made clear that "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *Id.* Thus, a foreign defendant's general intent to serve the United States market generally does not mean that the defendant has purposefully availed itself of any particular State market. *Id.* at 2790.

Justice Breyer, joined by Justice Alito, concurred only in the plurality's judgment, but also rejected Justice Brennan's "foreseeability" approach in *Asahi:* "[A] single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." *Id.* at 2792. Further, Justice Breyer expressly disagreed with the proposition that a foreign defendant is subject to personal jurisdiction if it "'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states.'" *Id.* at 2793 (quoting *Nicastro v. McIntyre Mach. Am.,* 201 N.J. 48, 987 A.2d 575 (N.J. 2010). Thus, Justice Kennedy's plurality opinion in *McIntyre*, together with Justice Breyer's concurrence, confirms that merely releasing a product into the stream of commerce, without "something

7
Case 5:12-cv-00570-FL   Document 133   Filed 12/11/15   Page 7 of 16

more" specifically targeting the forum, is not sufficient to support personal jurisdiction. *See, e.g., Polar Electro Oy v. Suunto Oy,* 2015 U.S. Dist. LEXIS 61645 **12-13 (D. Del. May 12, 2015).

### A. Krausz Has Failed To Show "Something More" As Required By *McIntyre*.

The record before the Court contains no evidence that Sensus Shanghai has engaged in activity purposefully directed toward North Carolina. Sensus Shanghai has no office or employees in North Carolina; does not own property or pay taxes in North Carolina; does not make, use, sell products in North Carolina; does not import products into North Carolina; and does not advertise in North Carolina. Faced with an absence of contacts between Sensus Shanghai and North Carolina, Krausz resorts to speculation – based only upon information appearing on Smith-Blair's website – that Sensus Shanghai supposedly knew "that Smith-Blair would place the [accused] product into the *national* stream of commerce via Smith-Blair's own *nationwide* sales team and independent retailers such as HD Supply waterworks" (emphasis added).[9] According to Krausz, because Sensus Shanghai supposedly knew that those *national* distribution channels service North Carolina, "Sensus Shanghai should reasonably have anticipated being brought into court here to defend suits relating to the sale of its products in North Carolina."[10] This argument (which actually is only a "foreseeability" argument) fails because "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted* the forum; . . . it is not enough that the defendant might have predicted that its goods will reach the forum state." *McIntyre,* 131 S. Ct. at 2788 (emphasis added). Krausz points to "no 'something more,' such as special state-related design, advertising, marketing, or anything else" showing that Sensus Shanghai intends to serve the

---

[9] Pl. Opp. p. 14.
[10] *Id.*

North Carolina market in particular. *McIntyre,* 131 S. Ct. at 2792 (Breyer, J.). Absent evidence of particular conduct by Sensus Shanghai targeted specifically toward North Carolina, any supposed hope or knowledge by Sensus Shanghai that a *nationwide* distribution system might direct its products into North Carolina is insufficient to support personal jurisdiction under the "something more" test endorsed in *McIntyre. See Polar Electro Oy,* 2015 U.S. Dist. LEXIS \*\*13-14.

Krausz's invocation of *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994) is unavailing. To the extent that *Beverly Hills Fan* purports to authorize jurisdiction under Justice Brennan's "foreseeability" standard, its continued vitality in light of *McIntyre* is questionable. But even if the decision could be read to follow the "something more" standard, Krausz's evidence still fails to establish jurisdiction over Sensus Shanghai because it does not show any purposeful conduct by Sensus Shanghai targeting North Carolina, nor does it show that any knowledge or awareness by Sensus Shanghai that the placement of the accused products into a *national* distribution channel was any more likely to lead to their shipment into North Carolina than into any other state. Moreover, unlike *Beverly Hills Fan,* Krausz has not even placed into the record any evidence that the accused products actually have been sold in North Carolina, evidence that the Federal Circuit found critically important in *Beverly Hills Fan. See id.* at 1564. Krausz's proof thus leaves the Court to speculate about the nature of the commercial relationship that Krausz claims to exist between Sensus Shanghai and North Carolina.

### B. Krausz Also Has Failed To Satisfy The "Foreseeability" Test.

In light of *McIntyre,* Sensus Shanghai submits that Justice Brennan's "foreseeability" test is no longer a viable basis for establishing personal jurisdiction. In any event, however, Krausz

has not even produced evidence sufficient to support jurisdiction over Sensus Shanghai under the "foreseeability" test.

On this point, Krausz first proclaims that "Sensus Shanghai is aware that the products it manufactures and sells to Smith-Blair are being marketed in this District,"[11] but Krausz does not provide any citation to record evidence to support this claim. Krausz then claims that Sensus Shanghai admitted such an awareness in Mike Wan's declaration,[12] but there is simply nothing in Mr. Wan's declaration that expresses any knowledge by Sensus Shanghai that its products are being offered for sale in North Carolina.[13] Next, Krausz points out that Smith-Blair and Sensus Shanghai are part of the Sensus family of companies, that Sensus Shanghai frequently communicates with Smith-Blair about manufacturing the accused Top Bolt® 421 products, and that some Sensus Shanghai employees in China have Smith-Blair e-mail addresses.[14] Those facts, though, have nothing at all to do with any foreseeability to Sensus Shanghai that it could be required to defend a suit in North Carolina concerning Top Bolt® 421 products. Finally, Krausz notes that Smith-Blair claims on its website to have a national sales team and that Smith-Blair makes products available for sale through a national distributor that has several locations in North Carolina.[15] *McIntyre,* however, precludes finding jurisdiction on this basis, because such facts indicate nothing more than an intent to serve the United States market generally. *Polar Electro Oy,* 2015 U.S. Dist. 61645 *14; *see also Oticon, Inc. v. Sebotek Hearing Sys., LLC,* 865 F. Supp. 2d 501, 513 (D.N.J. 2011) ("*[McIntyre]* stands for the proposition that targeting the national market is *not* enough to impute jurisdiction to all the forum States.").

---

[11] Pl. Opp. p. 9.
[12] *Id.*
[13] *See generally* Declaration of Mike Wan [DE 112].
[14] *Id.* pp. 9-10.
[15] *Id.* p. 10.

The Court may discount the case law cited by Krausz for the proposition that the sale of a product to a national retailer makes suit in any jurisdiction foreseeable.[16] That is because all but one of the decisions cited by Krausz are pre-*McIntyre,* which makes plain that such a proposition is not tenable. The sole decision cited by Krausz that post-dates *McIntyre* hails from the Eastern District of Texas,[17] which is widely regarded as one of the country's most liberal patent litigation venues on issues of jurisdiction and venue, and it is not in step with the reasoning of the plurality opinion and Breyer concurrence that, together, garnered six votes in *McIntyre.*

### III. KRAUSZ HAS NOT SHOWN THAT SENSUS SHANGHAI IS SUBJECT TO JURISDICTION AS SMITH-BLAIR'S ALTER EGO.

Krausz evidently has abandoned its theory that jurisdiction may be asserted over Sensus Shanghai based upon its supposed transaction of business in North Carolina through Sensus USA. Rather, in its opposition, Krausz argues for the first time that Sensus Shanghai is the alter ego of Smith-Blair, such that Smith-Blair's jurisdictional contacts with North Carolina should be attributed to Sensus Shanghai. However, nowhere in the First Amended Complaint does Krausz allege that Sensus Shanghai is subject to Smith-Blair's domination and control. As a result, Krausz has no relevant allegations in the pleadings to rely upon for purposes of defending against this motion to dismiss, so Krausz must come forward with specific evidence to warrant piercing Sensus Shanghai's corporate veil. Krausz has failed to do so.

Krausz and Sensus Shanghai agree that the Fourth Circuit applies the law of the forum state to determine whether to pierce the corporate veil. *See Perpetual Real Estate Servs. v. Michaelson,* 974 F.2d 545 (4th Cir. 1992). In Krausz's view, this simply requires all questions of piercing the corporate veil to be decided according to North Carolina law, without regard for North Carolina's choice of law rules. This Court, however, has concluded that North Carolina's

---

[16] *See id.* p. 11.
[17] *See Frito-Lay North America, Inc. v. Medallion Foods, Inc.,* 867 F. Supp. 2d 859 (E.D. Tex. 2012).

choice of law rule for piercing the corporate veil calls for the application of the law of the place of incorporation. *See, e.g., HBC Ventures, LLC v. Holt MD Consulting, Inc.,* 2012 U.S. Dist. LEXIS 139234 *31 (E.D.N.C. Sept. 27, 2012) (applying New Jersey law to determine whether to pierce veil of New Jersey corporation); *Memsys, Inc. v. ACT Tech. Seed Fund, LLC,* 2010 U.S. Dist. LEXIS 58895 *11 (E.D.N.C. June 14, 2010) (noting that Texas law governs claim to pierce corporate veil of Texas corporation).

Applying these principles here, whether to pierce the corporate veil of Sensus Shanghai, a Chinese corporation, is appropriately determined according to Chinese law. As the party seeking to disregard Sensus Shanghai's corporate form, Krausz has the burden of establishing that the doctrine of piercing the corporate veil should be applied, but Krausz has not informed the Court whether the doctrine is even recognized under Chinese law and, if so, what standards govern its application. In view of Krausz's total failure to establish even the basic legal framework for the Court's analysis of this issue, summary rejection of Krausz's request to pierce Sensus Shanghai's corporate veil would be appropriate.

Even if the Court were to apply North Carolina law, rejection of Krausz's attempt to pierce the corporate veil is still warranted, because Krausz has provided the Court with no proper basis for disregarding Sensus Shanghai's corporate form. Under North Carolina law, the corporate form is not disregarded lightly. *State ex rel. Cooper v. Ridgway Brands Mfg., LLC,* 362 N.C. 431, 438-39, 666 S.E.2d 107, 112 (2008). The aggrieved party must show that "the corporation is so controlled that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the established public policy of the State." *Henderson v. Sec. Mtg. & Fin. Co.,* 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968).

Indeed, North Carolina courts disregard the corporate form only upon proof of the following elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn v. Wagner,* 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985). Factors that North Carolina courts have relied upon in deciding whether to pierce the corporate veil include inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records. *Id.* at 455-58, 329 S.E.2d at 330-32.

Here, the evidence presented by Krausz is a far cry from the detailed factual showing that would be needed to pierce Sensus Shanghai's corporate veil under North Carolina law. Krausz provides no evidence that Sensus Shanghai is inadequately capitalized, no evidence of noncompliance with corporate formalities, and no evidence that Smith-Blair siphons funds from Sensus Shanghai. Krausz also makes no claim that the two companies fail to maintain separate books and financial records, nor does Krausz allege that they commingle funds. Instead, Krausz asks the Court to find that Sensus Shanghai is Smith-Blair's alter ego based upon evidence that, at most, shows merely that Smith-Blair employees monitor the quality of products that Sensus Shanghai manufactures in China; that Smith-Blair provides instructions by e-mail to Sensus

Shanghai about how products are to be made; and that some Sensus Shanghai employees have Smith-Blair e-mail addresses. This evidence suggests nothing more than an ordinary commercial relationship between affiliated companies, and it does not even come close to establishing a basis for the Court to find that Sensus Shanghai had "no separate mind, will or existence of its own," as North Carolina law demands. *Glenn,* 313 N.C. at 455, 329 S.E.2d at 330. In short, Krausz's attempt to assert personal jurisdiction over Sensus Shanghai based upon an "alter ego" theory is meritless and should be rejected.

### IV. PERSONAL JURISDICTION CANNOT BE EXERCISED OVER SENSUS SHANGHAI UNDER RULE 4(k)(2).

The Federal Circuit has made clear that "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1414 (Fed. Cir. 2009). This merely requires the defendant to identify "a forum where jurisdiction would have been proper at the time of filing, regardless of consent." *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1294 (Fed. Cir. 2012).

Sensus Shanghai was (and is) subject to personal jurisdiction with respect to the claims asserted by Krausz in the Western District or Arkansas, where Smith-Blair is located. Sensus Shanghai personnel regularly communicate via e-mail with Smith-Blair employees in Texarkana, Arkansas concerning Sensus Shanghai's manufacturing of the accused Top Bolt® 421 products. Also, the eventual destination for Top Bolt® 421 products shipped from China to the United States is Smith-Blair's facility in Texarkana, Arkansas. Thus, because Krausz's suit against Sensus Shanghai could have been properly filed against Sensus Shanghai in the Western District of Arkansas, jurisdiction is not available here under FED. R. CIV. P. 4(k)(2). *Touchcom,* 574 F.3d at 1403.

### V. THE COURT NEED NOT DEFER CONSIDERATION OF THIS MOTION PENDING COMPLETION OF JURISDICTIONAL DISCOVERY.

Even as Krausz complains that Sensus Shanghai waited too long to file its motion to dismiss, Krausz also argues that the motion is "premature" and should not be considered until Krausz has undertaken yet more discovery.[18] Krausz makes no effort, however, to identify any specific facts on which it believes jurisdictional discovery is needed. Rather, Krausz offers the Court merely the vague statement that it wants to conduct discovery to establish that "(1) Sensus Shanghai had the requisite knowledge that its products be [sic] sold by Smith-Blair in this District and (2) Sensus Shanghai is nothing more than Smith-Blair's alter ego. . ."[19] Whether jurisdictional discovery will be allowed is committed to the Court's sound discretion, *see Erdmann v. Preferred Research, Inc.,* 852 F.2d 788, 792 (4th Cir. 1988), and it is within the Court's discretion to deny jurisdictional discovery where – as here – "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." *Base Metal Trading, Ltd. v. OJSC Novokuznetsky Alum. Fac.,* 283 F.3d 208, 216 n. 3 (4th Cir. 2002).

This the 11th day of December, 2015.

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
jmorris@smithlaw.com
SMITH ANDERSON BLOUNT DORSETT
MITCHELL & JERNIGAN, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

Attorneys for Sensus Manufacturing Shanghai Limited

---

[18] *See* Pl. Opp. p. 23.
[19] Pl. Opp. p. 24.

## CERTIFICATE OF SERVICE

I hereby certify that, on the 11th day of December, 2015 the foregoing Reply in Support of Defendant Sensus Manufacturing Shanghai Limited's Motion to Dismiss for Lack of Personal Jurisdiction was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to the attorneys of record for Krausz Industries Ltd. as follows:

| | |
|---|---|
| Lance A. Lawson | llawson@mcnair.net |
| | mfogel@mcnair.net |
| Hunter S. Freeman | hfreeman@mcnair.net |
| Lynne A. Borchers | lborchers@myersbigel.com |
| | aderosa@myersbigel.com |
| | jsteen@myersbigel.com |
| Anthony Paul DeRosa | aderosa@myersbigel.com |
| | jsteen@myersbigel.com |

/s/ Robert J. Morris
Robert J. Morris
N.C. State Bar No. 15981
jmorris@smithlaw.com
SMITH ANDERSON BLOUNT DORSETT
MITCHELL & JERNIGAN, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800