IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-570-FL

| | |
|---|---|
| KRAUSZ INDUSTRIES LTD., *formerly known as* Krausz Metal Industries, Ltd.,<br><br>    Plaintiff,<br><br>    v.<br><br>SMITH-BLAIR, INC.; SENSUS USA, INC.; and SENSUS MANUFACTURING SHANGHAI LTD.,<br><br>    Defendants. | ORDER |

This matter is before the court on the motion by defendant Sensus Manufacturing Shanghai Limited ("Sensus Shanghai") to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (DE 110). Plaintiff responded in opposition and defendant Sensus Shanghai replied. Also before the court is the motion by defendant Smith-Blair, Inc. ("Smith-Blair") to seal an exhibit to plaintiff's response. (DE 125). In this posture, the issues raised are ripe for ruling. For the following reasons, the motions are granted.

**BACKGROUND**

Plaintiff filed suit in August 2012 alleging patent infringement by defendants, and plaintiff filed an amended complaint in March 2013. Plaintiff seeks a declaration of infringement, monetary damages, and injunctive relief to prevent continuing infringement. Plaintiff claims that defendants make, sell, or offer to sell, a pipe coupling device (the "421 Top Bolt ®") that infringes a patent

owned by plaintiff, U.S. Patent No. 6,293,556 (the "'556 Patent" or "the patent"). The '556 Patent issued in 2001, and was reconfirmed in 2012.

By way of summary, the patent describes in its abstract a "Coupling and Connecting Means for pipes of the same or different diameters and a seal to be used with such connecting means." ('556 Patent, Abstract (DE 24-1 at 2)).[1] The three claims of the patent are as follows:

> 1. A sealing ring for pipe connector means made of resilient material, the sealing ring comprising a first sleeve-like ring the cross section of which defines a [sic] inner space therein, and a second ring overriding said first sleeve-like ring and being loosely connected to said first ring, said second ring being adapted to be torn off said first ring at a predetermined location so as to adapt the sealing ring to interconnect pipes of substantially different diameters.
>
> 2. A sealing ring as claimed in claim 1 where said second ring is integral with said first ring.
>
> 3. A sealing ring as claimed in claim 1 where said seal is incorporated with connecting means provided with a U shape ring and placed within said U shaped ring.

(Id. Col. 2, lines 42-54). Plaintiff alleges infringement of claim 1 and claim 3 of the patent.

Defendants Sensus USA, Inc. ("Sensus USA") and Smith-Blair filed answers and counterclaims of invalidity and non-infringement, on May 6, 2013. Defendant Sensus Shanghai filed its answer and counterclaims of invalidity and non-infringement, on December 3, 2013. The court entered its case management order on January 15, 2014. In accordance with the deadlines therein and in the local patent rules, plaintiff served initial infringement contentions in February, 2014, and defendants served initial non-infringement and invalidity contentions in April 2014, supplemented in September 2014.

---

[1] Except where otherwise expressly noted, all citations to documents using the docket entry number (DE) provided in the court's docket, including briefs and exhibits thereto, will specify the page number automatically designated by the CM/ECF system, rather than the page number, if any, specified on the original document.

2

The court entered its order on claim construction on August 31, 2015. On September 2, 2015, plaintiff disclosed final infringement contentions, pursuant to Local Patent Rule 303.6(a). On September 28, 2015, defendants disclosed final non-infringement and invalidity contentions, pursuant to Local Patent Rule 303.6(b).

On October 13, 2015, defendant Sensus Shanghai filed the instant motion to dismiss. In support of the motion, defendant Sensus Shanghai filed declarations by Mike Wan, plant manager at Sensus Shanghai; Colin Flannery, executive vice president, secretary and general counsel of defendant Sensus USA; and Gerry Larsen, director of manufacturing and operations at defendant Smith-Blair.

Attached to its response in opposition, plaintiff filed the following exhibits: contentions served by defendant Sensus Shanghai; printouts from Smith-Blair website; printouts from HD Supply Waterworks website; and two proposed sealed exhibits comprising Smith-Blair internal emails and Smith-Blair responses to interrogatories. Defendant Smith-Blair filed the instant motion to seal the first such exhibit, Exhibit D, but not the second, Exhibit I.

In its reply in support of the motion to dismiss, defendant Sensus Shanghai filed exhibits comprising its discovery responses and requests, as well as contentions and disclosures served on plaintiff in this case.

In the meantime, upon motion by the parties, this court has extended the deadline for fact discovery several times. Most recently, the court extended the fact discovery deadline to May 27, 2016. In accordance with the case management order, expert discovery is due to be completed 135 days thereafter, or October 9, 2016. Dispositive motions are due 30 days thereafter, or November 8, 2016.

3

## STATEMENT OF FACTS

The facts bearing on the issue of personal jurisdiction, with all reasonable inferences and factual disputes drawn in favor of plaintiff, may be summarized as follows.

Defendant Smith-Blair is a Delaware corporation with its principal place of business in Arkansas, engaged in the business of manufacturing and selling pipe fittings and tools for the waterworks industry. Defendant Sensus USA is a Delaware corporation with its principal place of business in North Carolina, engaged in the business of utility infrastructure systems. Defendant Sensus Shanghai is a corporation organized and existing under the laws of the People's Republic of China, with its sole place of business in Shanghai, China, engaged in the business of manufacturing and selling pipe fittings and tools for the waterworks industry.

Defendant Smith-Blair was first incorporated in California in the 1940s, and it established a manufacturing facility in Arkansas in the 1950s. (DE 120-6 at 2). Sometime between 1989 and 2005, defendant Smith-Blair was acquired by "the Sensus family of companies, who offer world-class clean technology solutions including smart metering, communications systems, software, and services for electric, gas and water industries." (DE 113 ¶7; see 114 ¶ 4; see DE 120-6 at 2). Defendant Smith-Blair describes itself in the 421 Top Bolt ® product brochure as "a Sensus company." (DE 24-3).

According to its financial disclosure statement, defendant Smith-Blair is a wholly-owned subsidiary of Sensus Spectrum, LLC; which is a wholly-owned subsidiary of defendant Sensus USA; which is a wholly-owned subsidiary of Sensus (Bermuda) 2, Ltd. (a Bermuda corporation); which is a wholly-owned subsidiary of Sensus (Bermuda) 1, Ltd. (a Bermuda corporation). (DE 16 at 1).

4

In addition, "[e]ntities affiliated with and partially owned by Goldman Sachs Group Inc. own approximately 33% of the stock of Sensus (Bermuda) 1, Ltd." (Id. at 2).

Defendant Smith-Blair "continues to operate from its 261,000 square foot plant . . . in Texarkana, Arkansas, in which it builds thousands of products that ship around the world each day." (DE 120-6 at 3). "To help keep pace with global growth, [defendant] Smith-Blair opened an additional 50,000 square foot manufacturing plant in 2005 in Shanghai, China" (hereinafter the "Shanghai facility"). (Id.) Products manufactured at the Shanghai facility include the 421 Top Bolt® product. (DE 113 ¶5; DE 112 ¶8). Products manufactured at the Shanghai facility "are made by [defendant] Smith-Blair employees to the same quality control and inspection standards as those in Texarkana." (DE 120-6 at 3).

Defendant Sensus Shanghai owns and operates the Shanghai facility. (DE 112 ¶8; DE 113 ¶5). Defendant Smith-Blair does not have any ownership interest in the Shanghai facility or in defendant Sensus Shanghai. (DE 120-6 at 3; see also DE 113 ¶7; DE 112 ¶12).[2] Defendant Sensus Shanghai is, like defendants Smith-Blair and Sensus USA, "part of the Sensus family of companies." (DE 114 ¶ 4; DE 112 ¶12). Defendant Sensus Shanghai, like defendant Smith-Blair, is multiple subsidiary levels below Sensus (Bermuda) 1, Ltd. (a Bermuda corporation). (DE 42 at 1-2) Defendant Sensus Shanghai's immediate parent is "Sensus Metering Systems (LuxCo 3) S.A.R.L., a Luxembourg company." (DE 112 ¶12; DE 42 at 1).

Employees of defendant Smith-Blair communicate through email with employees of defendant Sensus Shanghai regarding production of the 421 Top Bolt ® product. (See DE 121 at 3-9). Some employees of defendant Smith-Blair work at the Shanghai facility, (see DE 120-6 at 3),

---

[2] Defendant Sensus USA also does not hold any ownership interest in Sensus Shanghai. (DE 112 ¶12; DE 113 ¶7; DE 114 ¶ 4).

and some of Sensus Shanghai's employees use email addresses ending with "smith-blair.com" and routinely correspond about manufacturing operations, including development and manufacturing of the 421 Top Bolt® products. (See DE 121 at 3-9).[3]

Defendant Smith-Blair purchases the 421 Top Bolt® products from Sensus Shanghai in China, and title to the products passes to defendant Smith-Blair in China. (DE 113 ¶5). Defendant Smith-Blair ships 421 Top Bolt® products from China to the United States or elsewhere in the world. (Id.). Defendant Smith-Blair "usually imports 421 Top Bolt® products into the United States through ports on the west Coast." (Id.). "They are then shipped by ground transportation from the West Coast to Smith-Blair's facility in Texarkana, Arkansas." (Id.).

Defendant Smith-Blair maintains a "sales network" for its "Water & Industrial" products, including the 421 Top Bolt® products, which it describes on its website as being present in all 50 states of the United States plus the District of Columbia. (DE 120-7). Included is a link for sales representatives in North Carolina. (Id.). Under the "Solutions" link on its website, anyone may find 421 Top Bolt® products under the "Steel Couplings" tab, review its specifications and pricing, and call defendant Smith-Blair to place an order. (DE 120-8). 421 Top Bolt® products can also be purchased through distributors such as HD Supply Waterworks, which has 240 locations nationwide, including in North Carolina, as well as a website from which customers may purchase 421 Top Bolt® products. (See DE 120-9).

---

[3] It is not stated in the exhibit provided by plaintiff that any of the individuals included in the email chains are in fact employees of defendant Sensus Shanghai. (See DE 121 at 3-9). For purposes of the instant motion, however, the court accepts as true the inferences drawn by plaintiff in its description of the exhibit.

## DISCUSSION

A.     Standard of Review

A district court must apply Federal Circuit law, "not that of the regional circuit, to issues of personal jurisdiction in a patent infringement case." Rates Tech. Inc. v. Nortel Networks Corp., 399 F.3d 1302, 1307 (Fed. Cir. 2005). Plaintiff "bears the burden of affirmatively establishing" the requisite "minimum contacts" required for personal jurisdiction over a foreign defendant. Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1378 (Fed. Cir. 2015) (quotations omitted). "When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden of proof." Id. Under this standard, "[w]hen analyzing this showing after a motion to dismiss, the district court must accept uncontroverted allegations in plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor." Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012).

B.     Analysis

Plaintiff raises several grounds in opposition to the instant motion to dismiss. First, plaintiff contends that defendant Sensus Shanghai has waived its defense through its participation in this case to date. Second, plaintiff asserts that the court has jurisdiction because defendant Sensus Shanghai delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in North Carolina. Third, plaintiff argues that defendant Sensus Shanghai is subject to jurisdiction as the alter ego of defendant Smith-Blair. Fourth, plaintiff contends that defendant Sensus Shanghai is subject to jurisdiction due to its contacts with the United States in general. The court will address each in turn.

1.      Waiver

Under Federal Rule of Civil Procedure 12(h), a personal jurisdiction defense may be waived if a party fails to raise the issue in a responsive pleading or omits it from a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(2) - (5). By contrast, "filing a counterclaim, compulsory or permissive, cannot waive a party's objections to personal jurisdiction, so long as the requirements of Rule 12(h)(1) are satisfied." Rates Tech. Inc. v. Nortel Networks Corp., 399 F.3d 1302, 1308 (Fed. Cir. 2005).

Under certain circumstances, however, "a party may consent to personal jurisdiction by extensively participating in the litigation without timely seeking dismissal," id. at 1309, or by "actively litigating the suit." United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 882 (Fed. Cir. 1997). For example, a party may "forfeit[] its defense of lack of personal jurisdiction by participating in extensive pretrial proceedings and forgoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer." Rates, 399 F.3d at 1308 (quotations omitted). Or, a party may waive its defense "after participating in intensive post-judgment proceedings, [then moving] to vacate the default judgment entered against them six years earlier." Id. at 1309 (quotations omitted). The Federal Circuit "places waiver within the discretion of the trial court, consistent with its broad duties in managing the conduct of cases pending before it." Ziegler, 111 F.3d at 882.

Considering the record and circumstances of this case, plaintiff has not established waiver on the part of defendant Sensus Shanghai. As an initial matter, defendant raised its personal jurisdiction defense in its answer, filed December 3, 2013, stating that "The Complaint should be dismissed as to Sensus Shanghai . . . because it is not subject to personal jurisdiction." (DE 41 at

8

9). Defendant Sensus Shanghai thus complied with Federal Rule of Civil Procedure 12(h)(1). The filing of its counterclaim did not serve to waive the defense. See Rates Tech., 399 F.3d at 1308.

Defendant Sensus Shanghai also has not "extensively participat[ed] in the litigation," id. at 1309, or "actively litigat[ed] the suit." Ziegler, 111 F.3d at 882. Rather, it has proceeded in tandem with the other defendants through the claim construction phase of this case, in which all defendants together sought a ruling by the court on independent claim construction issues. In this respect, this case is similar to Ziegler, where the Federal Circuit affirmed a finding of no waiver, where a defendant raised a defense of personal jurisdiction "at an advanced stage of litigation," after the district court ruled a summary judgment motion that "bore no relationship to its inadequate service of process defense." 111 F.3d at 883.

At the same time, in contrast to Ziegler, defendant Sensus Shanghai is not the sole defendant in the case. Thus, the continuing presence of Sensus Shanghai in the suit prior to its motion to dismiss has not significantly expanded the proceedings in the litigation. Because a claim construction ruling effectively could have ended the case against all defendants, defendant Sensus Shanghai reasonably awaited completion of that ruling prior to filing its motion to dismiss.

In sum, the court finds that defendant Sensus Shanghai has not waived its defense of personal jurisdiction through its litigation conduct in this case.

    2.    Stream of Commerce

Plaintiff contends it has met the due process prerequisites for personal jurisdiction because defendant Sensus Shanghai delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in North Carolina. "The precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled" in Federal Circuit law. Celgard, LLC

v. SK Innovation Co., 792 F.3d at 1381. "Whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum is required" remains an open question in the Federal Circuit, in light of two inconsistent sets of Supreme Court plurality opinions. Id. (discussing Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102, 112 (1987) (O'Connor J. plurality opinion); id. at 117 (Brennan J., concurring in part); and McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780, 2791 (2011) (Kennedy J. plurality opinion)).

In this case, as in prior Federal Circuit cases, this court need not "take a position on the requirements of a stream-of-commerce jurisdictional test" because plaintiff has failed to establish jurisdiction under the "more flexible foreseeability standard articulated by Justice Brennan in Asahi." Id. (citing Asahi, 480 U.S. at 117 (Brennan J., concurring in part)). In Asahi, Justice Brennan articulated the standard as follows:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity.

480 U.S. at 117. To illustrate the standard, Justice Brennan contrasted "the foreseeability of litigation in a State to which a consumer fortuitously transports a defendant's product (insufficient contacts) with the foreseeability of litigation in a State where the defendant's product was regularly sold (sufficient contacts)." Id. at 119 (emphasis in original). Thus, Justice Brennan opined that an out-of-state defendant's "regular and extensive sales of component parts to a manufacturer it knew

10

Case 5:12-cv-00570-FL   Document 154   Filed 05/09/16   Page 10 of 20

was making regular sales of the final product in [the forum state]" is sufficient "to establish minimum contacts with [the forum state]" to support personal jurisdiction over the out-of-state defendant. Id. at 121.

The Federal Circuit recently has illustrated the types of product distribution that do not meet this minimal standard for personal jurisdiction. For example, in Celgard, the Federal Circuit held that plaintiff had not established the requisite minimum contacts under the Justice Brennan test in Asahi, noting:

> [Plaintiff] has not provided evidence that [defendant] was aware that its accused separators were marketed in North Carolina. The record evidence shows only that [defendant] sells its products to OEMs, who then sell completed batteries to CE manufactures that resell them in the United States. There is no evidence establishing that [defendant's] products actually enter the forum state. . . . [Plaintiff's] evidence fails to show that [defendant's] separators actually have been found in North Carolina, much less that [defendant] can foresee that its separators will make their way there.

Celgard, 792 F.3d at 1382. Similarly, in AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1365 (Fed. Cir. 2012), the Federal Circuit held that plaintiff had not established the requisite minimum contacts with the forum state, Wyoming, noting:

> at most, one of the defendants made isolated shipments to Wyoming at the request of third parties. . . . [M]oreover, the cause of action for patent infringement here does not arise out of the isolated Wyoming shipments. [Plaintiff] has failed to submit any declarations identifying sales in Wyoming that would refute the defendants' assertions that their contacts with Wyoming are sporadic at best. Finally, [plaintiff] has proffered no evidence indicating that Wyoming was part of any defendant's continuous, established distribution channels.

689 F.3d at 1365.

By contrast, in Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (1994), the Federal Circuit found sufficient evidence to establish minimum contacts in Virginia, where the plaintiff's declarations documented actual purchases of accused products from multiple retail outlets

11

in Virginia. Id. at 1560. The court observed that one defendant, a New Jersey corporation, imported fans from the other defendant, a Chinese corporation, and "plac[ed] the accused fans into the chain of commerce, which includes shipping the fans into Virginia for sale to customers through an intermediary (Builder's Square)." Id. at 1563 (emphasis added). The court noted "[i]t is undisputed that at least fifty-two [Chinese defendant's] fans were present in Virginia bearing [New Jersey defendant's] warranty, reflecting an ongoing relationship with the Virginia retailer and customers." Id. at 1564 (emphasis added). Accordingly, the court determined that this showing met both articulations of the stream of commerce standard in Asahi. Id. at 1566.

Similarly, in Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315 (Fed. Cir. 2005), the Federal Circuit determined that "the evidence already presented by plaintiff is sufficient to demonstrate that [foreign defendant] sells a very large volume of LCDs to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities." Id. at 1320 (emphasis added). The court observed that "The evidence on the established distribution channels presented by CEA suggests that the flow of CMO products to Delaware is 'regular and anticipated,' and more than unpredictable currents or eddies.'" Id. (quoting Asahi, 480 U.S. at 117) (emphasis added). Accordingly, the Federal Circuit held that plaintiff's showing met the stream of commerce standard articulated by Justice Brennan in Asahi. See id. It remanded the case, however, to the district court for additional factual discovery on whether the plaintiff could meet the more stringent stream of commerce test articulated by Justice O'Connor in Asahi. See id. at 1322.

Here, as in <u>Celgard</u>, there is no evidence establishing that defendant Sensus Shanghai was aware that its accused product was marketed in North Carolina. Plaintiff points to defendant's declaration of Mike Wan to support this proposition, but that declaration only states Mr. Wan's awareness that its products are "shipped from China to the United States or elsewhere in the world." (DE 112 ¶8). Mr. Wan does not suggest any awareness of distribution into North Carolina, and he asserts that defendant "Sensus Shanghai does not participate in Smith-Blair's distribution or sale of 421 Top Bolt ® products in the United States." (<u>Id.</u> ¶11).

In addition there is no allegation or evidence that defendant Sensus Shanghai's products actually entered North Carolina or that any of its products have been found in North Carolina. While plaintiff has produced internet pages suggesting that customers in North Carolina can place an order for 421 Top Bolt ® products, through defendant Smith-Blair or through distributors such as HD Supply Waterworks, (<u>see</u> DE 120-7, 120-8, 120-9), none of this evidence suggests actual sales made in North Carolina, nor that any 421 Top Bolt ® products are present in North Carolina. Evidence of minimum contacts is thus lacking as in <u>Celgard</u> and <u>AFTG</u>. <u>See</u> 792 F.3d at 1382; 689 F.3d at 1365.

Even more critically lacking is evidence that such products are part of a "<u>regular</u> and anticipated flow of products from manufacture to distribution to retail sale" in North Carolina. <u>Asahi</u>, 480 U.S. at 117 (emphasis added); <u>see</u> <u>Commisariat</u>, 395 F.3d at 1321; <u>Beverly Hills Fan</u>, 21 F.3d at 1564. The allegations and evidence offered by plaintiff permit only speculation that 421 Top Bolt ® products could be sold or present in North Carolina, through "unpredictable currents or eddies," <u>Asahi</u>, 480 U.S. at 117, dependent upon the location of customer orders or demand. Such

13

speculation regarding sales in North Carolina is insufficient to meet the minimum contacts requirements articulated in Asahi and Federal Circuit law. See id.; Commisariat, 395 F.3d at 1321.

Plaintiff suggests that defendant Sensus Shanghai must have known of shipments of its product to North Carolina because of the close relationship between defendant Smith-Blair and defendant Sensus Shanghai. Plaintiff points out that Smith-Blair opened Shanghai facility in 2005 to manufacture Smith-Blair products, and that Smith-Blair employees manufacture such products in the Shanghai facility. (See DE 120-6 at 2-3). This evidence, however, does not establish any minimum contacts with North Carolina. Rather, it establishes, as defendant Sensus Shanghai readily concedes, a substantial connection with Texarkana, Arkansas, where defendant Smith-Blair is based. (See id.; Def's Reply, DE 133, at 14). It is undisputed that "Smith-Blair usually imports 421 Top Bolt ® products into the United States through ports on the West Coast," and then ships them "by ground transportation from the West Coast to Smith-Blair's facility in Texarkana, Arkansas." (DE 113 at 2).

Plaintiff argues that it should be permitted to conduct further jurisdictional discovery into defendant Sensus Shanghai's knowledge and intent regarding contacts in North Carolina. However, where the allegations and the evidence together demonstrate that plaintiff failed to meet its prima facie burden of establishing minimum contacts with North Carolina, additional jurisdictional discovery is not warranted. For example, unlike in Commissariat, plaintiff has not made a sufficient prima facie showing of "regular and anticipated" flow of 421 Top Bolt ® products into North Carolina, which could then warrant further discovery into additional components of the due process inquiry. 395 F.3d at 1322-23.

In addition, some areas of investigation, which conceivably could have altered the outcome of the jurisdiction analysis, have been available to plaintiff of its own initiative. For example, unlike in Beverly Hills Fan, plaintiff has not produced declarations evidencing investigation of sales of the accused product in North Carolina. 21 F.3d at 1560-61 (noting submission by plaintiff of multiple declarations regarding actual sales of accused product in North Carolina and presence of accused product in North Carolina). Plaintiff could have obtained similar information on its own accord, at least to demonstrate that further discovery into that type of information would be fruitful, but it did not do so. As such, plaintiff has not demonstrated a need for additional jurisdictional discovery.

In sum, plaintiff has not established a prima facie case of personal jurisdiction over defendant Sensus Shanghai under a stream-of-commerce theory of jurisdiction.

3. Alter Ego

Plaintiff contends that defendant Sensus Shanghai is subject to jurisdiction in North Carolina because it is acting as the alter ego or mere instrumentality of defendant Smith-Blair. "For purposes of specific personal jurisdiction, the contacts of [one entity] may be imputed to the defendant under . . . [an] alter ego theory." Celgard, 792 F.3d at 1379. Under North Carolina law,[4] "separate identities of . . . affiliated corporations may be disregarded" upon establishment of three elements:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

---

[4] Defendant suggests that Chinese law applies to the determination of whether defendant Sensus Shanghai is the alter ego of defendant Smith-Blair, while providing an analysis under North Carolina law. Plaintiff contends that the determination must be made under North Carolina law. By contrast, the Federal Circuit has suggested recently that the determination must be made with reference to Federal Circuit law. See Celgard, 792 F.3d at 1379-80. Because the court holds that plaintiff has not provided a basis for piercing the corporate veil under North Carolina law and such law is not materially different from Federal Circuit law, the court provides analysis in the text above under North Carolina law. Because defendant does not cite to any Chinese law, the court does not reach the issue of application of Chinese law.

15

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Glenn v. Wagner, 313 N.C. 450, 455 (1985) (quotations omitted). In analyzing the first element, the court may consider factors such as:

> inadequate capitalization, non-compliance with corporate formalities, complete domination and control, excessive fragmentation . . . . non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, non-functioning of other officers or directors, [and] absence of corporate records.

Id. at 458. "[T]he instrumentality rule is an equitable doctrine." Id. "It is not the presence or absence of any particular factor that is determinative," but "[r]ather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had no separate mind, will or existence of its own and was therefore the mere instrumentality or tool of the dominant corporation." Id. "A corporation's separate and independent existence is not to be disregarded lightly," and "proceeding beyond the corporate form is a strong step: [l]ike lightning, it is rare and severe." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 438-39 (2008).

In this case, plaintiff has failed to establish a prima facie case of personal jurisdiction on the basis of an alter ego theory. As an initial matter, there is no allegation or evidence of "majority or complete stock control," and "complete domination . . . of finances, . . . policy and business practice." Glenn, 313 N.C. at 458. To the contrary, evidence in the record shows that defendant Smith-Blair does not have any ownership interest in the Shanghai facility or in defendant Sensus

16

Shanghai. (DE 120-6 at 3; see also DE 113 ¶7; DE 112 ¶12). Lack of showing on this basic component of alter ego liability in itself is fatal to jurisdiction on an alter ego basis.

Plaintiff also provides no allegation or evidence of inadequate capitalization, non-compliance with corporate formalities, non-payment of dividends, insolvency, non-functioning of officers or directors, or absence of corporate records. Thus, none of the common factors used to support piercing the corporate veil are present in this case. See Glenn, 313 N.C. at 458; see Celgard, 792 F.3d at 1380.

Plaintiff suggests that the presence of Smith-Blair employees in China, and the use of "smith-blair.com" email addresses by individuals at the Shanghai facility, and Smith-Blair's direction over manufacturing and shipments from the Shanghai facility, supports piercing the corporate veil. Piercing the corporate veil, however, is not dependent upon sharing of employees or direction of manufacturing operations of an affiliated entity. See Glenn, 313 N.C. at 458. Rather, it depends upon disregard of corporate formalities, commingling of accounts, sharing officers, and directing corporate or financial matters of the affiliated entity. See id. Notably absent is any allegation or evidence of such. To the contrary, the record demonstrates observance of corporate formalities and ownership distinction. (See, e.g., DE 113 ¶7; DE 112 ¶12). The record also demonstrates financial transactions between separate corporate entities, where "Smith-Blair purchases the 421 Top Bolt ® products from Sensus Shanghai in China," and "[t]itle to the products passes to Smith-Blair in China." (DE 113 ¶5).

Plaintiff contends that it should be entitled to jurisdictional discovery regarding alter ego theory of personal jurisdiction, in the event it has failed to make a prima facie showing. A "plaintiff's right to conduct jurisdictional discovery should be sustained when factual allegations

17

suggest the possible existence of requisite contacts between the defendant and the forum state with reasonable particularity." Commissariat, 395 F.3d at 1323 (internal quotations omitted).

Here, by comparison, plaintiff has made no factual allegations supporting the core requirements and factors pertinent to application of the alter ego theory of personal jurisdiction. Plaintiff has not articulated with reasonable particularity the requisite disregard of corporate formalities to impute contacts of defendant Smith-Blair to defendant Sensus Shanghai. In the absence of such articulation, discovery into the alter ego theory of personal jurisdiction would constitute no more than "a fishing expedition in the hopes of discovering some basis of jurisdiction." Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 216 (4th Cir. 2002). Thus, the court declines to allow discovery regarding alter ego theory of jurisdiction.

In sum, plaintiff has failed to make a prima facie showing of jurisdiction on the basis that defendant Sensus Shanghai is acting as the alter ego of defendant Smith-Blair.

4. Nationwide Jurisdiction

Under Federal Rule of Civil Procedure 4(k)(2), for a claim that arises under federal law, the court may assert personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). "Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012).

18

Case 5:12-cv-00570-FL   Document 154   Filed 05/09/16   Page 18 of 20

This rule authorizes personal jurisdiction over a defendant if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." Id. at 1294.

As for the second requirement, "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1414 (Fed. Cir. 2009) (quotations omitted). If, by contrast, "the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." Id. (quotations omitted). "[T]he defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought a forum where jurisdiction would have been proper at the time of filing, regardless of consent." Merial, 681 F.3d at 1294.

Here, defendant Sensus Shanghai has identified the Western District of Arkansas as another forum where it was, and is, subject to personal jurisdiction with respect to the claims asserted by plaintiff against defendant Sensus Shanghai. (See DE 133 at 14). Therefore, because defendant has met its burden of identifying an alternative forum in the United States, personal jurisdiction is not available under Rule 4(k)(2).

In summary, plaintiff has failed to establish a prima facie case of personal jurisdiction over defendant Sensus Shanghai in this district. Therefore, defendant's motion to dismiss must be granted.

C.  Motion to Seal

For good cause shown, defendant Smith-Blair's unopposed motion to seal proposed sealed Exhibit D to plaintiff's response is granted, where said exhibit contains confidential and proprietary

19

business information, and the interest in protection of such information outweighs the common law interest in access to the material. The clerk is DIRECTED to maintain under seal docket entry 121, where that document includes plaintiff's Exhibit D, which must remain under seal. (See DE 121 at 1-9). Plaintiff is DIRECTED to re-file that portion of docket entry 121 no longer under seal (Exhibit I), within 14 days of the date of this order.

## CONCLUSION

Based on the foregoing, defendant Sensus Shanghai's motion to dismiss for lack of personal jurisdiction (DE 110) is GRANTED. Defendant Smith-Blair's motion to seal (DE 125) is GRANTED. The clerk is DIRECTED to maintain under seal docket entry 121, where that document includes plaintiff's Exhibit D, which must remain under seal. (See DE 121 at 1-9). Plaintiff is DIRECTED to re-file that portion of docket entry 121 no longer under seal (Exhibit I), within 14 days of the date of this order.

SO ORDERED, this the 9th day of May, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge